May it please the Court, my name is Paul Burns. It's my privilege to represent the appellant in this case, Janelle Behler. Ms. Behler was employed as a pharmaceutical sales representative for Janssen Pharmaceutical Company. She was well-employed, had a successful career. In October of 2011, she went on short-term disability leave. Her treating health care provider, Dr. Van Wey, diagnosed her to be suffering from post-traumatic stress disorder and generalized anxiety disorder. There's no dispute in this case that those conditions were disabilities under the Washington Law Against Discrimination, RCW 49.60.040, the statutory definition of disability. I'd like to make three points in my argument this morning, Your Honors. Number one, Dr. Van Wey's March 16, 2012, letter of treatment summary and workplace accommodations was sufficient to trigger the interactive process, the duty to engage in the interactive process on the part of the employer, and the employer refused to engage in that process. What do we do about the fact that she changed her mind a few days later? Well, number one, Your Honor, I don't think she did change her mind a few days later. I think you're referring to her agreement with Dr. Bostwick's IME report that indicated that Ms. Behler would be ready to return to work in six months. As we noted in the briefing, Dr. Bostwick was not in any way asked to consider whether reasonable accommodations would facilitate Ms. Behler's return to work prior to that six-month period. And indeed, I'll discuss Dr. Bostwick's report in a few minutes, but it's clear from Dr. Bostwick's report that he did not at all consider accommodations for purposes of facilitating an earlier return to work. And in fact, he made a determination of when she would be fully healed or completely healed. Also, Your Honor, to rely exclusively on that representation by Dr. Van Way that she agreed with Dr. Bostwick would ignore Dr. Van Way's declaration testimony, which was in the summary judgment record, which stated quite clearly that although she did agree with Dr. Bostwick that six months would allow her to return to work with no accommodations, Dr. Van Way's summary judgment declaration also stated quite clearly that she believed that when she issued that March 12, 2016 letter, she believed that those accommodations would facilitate a successful return to work, or at least it was plausible, and that's the standard, to determine whether or not accommodations should have been attempted. As I was reading through Dr. Van Way's letters chronologically, she sent a letter that, if we take it in the light most favorable to Behler, is that how you know, and the read group tried to harmonize her statement with Dr. Bostwick's report and sent her Dr. Bostwick's report. She said pretty straightforwardly that Behler should remain off work for six more months, given the variable cognitive deficit secondary to her psychological diagnosis, and just asked for the job position to be held open for six months. And then the read group said she could return to work in any capacity, and said, but she could return to work in October. So it does seem that there's a difference between the March letter, which I guess said she could start working in May, and then the subsequent letters. How do we understand that difference? Two points, Your Honor. Number one, as I indicated before, with respect to the entire communication with Dr. Bostwick, there's no consideration of reasonable accommodation. Dr. Bostwick was not asking for the job position. But I'm looking at Dr. Van Way's letter, her subsequent letter saying that Behler could not return to work in any capacity, which suggests that reasonable accommodations would not be of assistance there. Well, the other point that I'd like to make, Your Honor, is that's probably fertile ground for cross-examination at trial. But to say that that conclusively establishes that she was unable to return to work ignores both Dr. Van Way's chart notes of March 8th, 2012, which indicated that the target return to work date was March 9th. It ignores the letter of treatment summary and workplace accommodations of March 16th, 2012. And it ignores the summary judgment declaration in the record, which says that it was her view as of that time that with accommodations she could return to work. But with respect to the interactive process, those letters, subsequent letters basically said she can't return in any capacity. So it's ‑‑ I'm trying to understand how the employer could have engaged in the interactive process in light of those letters from Dr. Van Way. Again, I think my position is you have the summary judgment record, Dr. Van Way's chart notes and her letter of treatment summary and her summary judgment declaration. But the declaration came long after. So the employer wasn't aware of that when it was reading her letters. So when the employer is reading the letters, it basically says she can't work in any capacity, but maybe in October with  Let me shift gears just a little bit and let me respond to your question a different way. If you look at ‑‑ Janssen had ‑‑ Janssen is relying on a release to work form that it states that it supplied and it wanted completed in order to facilitate the return to work. That form is at page 88 of the record. If you look at that form, your honor, that form does address the issue of temporary ‑‑ of accommodations, but it says this. If temporary accommodations are necessary, the projected full duty release date is and then it leaves it blank. And then it lists ‑‑ it provides the physician with the opportunity to list restrictions and when the restrictions might end. That form is in the record. The jury could look at that form and the jury could determine that that form was a requirement of a full release. That was the form that was apparently submitted to the healthcare providers. There's no evidence in the record that that form was actually submitted to Ms. Beeler. I invite the court to look at pages 87 to 88 of the record for that. There's some correspondence between the Reed Group and Ms. Beeler talking about a release to return to work form, but there's no indication that she was provided with that form. My point is that the exchange ‑‑ the triangular exchange between the Reed Group and Dr. Boswick and Dr. Van Way contemplates a full release. That's also apparent in Dr. Boswick's case. In Dr. Boswick's report, and I'm looking at specifically at page 411 of the record, question 8 that Dr. Boswick addressed asks this, what limitations and restrictions are supported by the available ‑‑ I think that should be data. Please explain and include an estimated start date and duration of any limitations and restrictions. Dr. Boswick then outlines the restrictions that he sees are present, and then he says this, her limitations and restrictions will more probably than not be resolved at the conclusion of her psychological treatment with Dr. Van Way within a period of six months. That evidence is sufficient to support a finding of fact that the employer was looking for a full release before it would even consider attempting reasonable accommodations. You can't ignore that evidence in the record. That evidence has to be construed in the light most favorable to the plaintiff in this case. I want to reserve some time for rebuttal. I do want the Court to consider three points. One, Dr. Van Way's March 16th letter was sufficient to trigger the interactive process, which the employer did not engage in. Two, Dr. Van Way's March 16th letter is a triable issue of fact concerning whether Ms. Buehler could return to work in the spring of 2012 with reasonable accommodations. And three, the record demonstrates a triable issue of fact concerning whether the employer in this case required a full release before allowing Ms. Buehler to return to work. That would have been a per se violation of the WLAD. I would like to reserve the rest of my time for rebuttal. Thank you very much. Good morning, Your Honors. I'm Cheryl Willard and I'm here on behalf of Janssen Pharmaceutical and Johnson & Johnson. Janssen believes that there are four things that need to be looked at by the Court. First of all, whether the March 16th, 2012 letter received by the Reed Group on March 20th required immediate implementation of what have been described as plausible accommodations, because that appears to be what is being argued by the appellant. And whether the conversations that were had with the appellant and her physician in both March 2012 and in April of 2012 constituted interaction between the parties regarding issues of accommodation. It is clear under the law of the State of Washington that accommodations and interactive discussions need not only take place with the employee, but can also involve other individuals, including a health care provider, which is exactly what was going on in this case. The other question we believe has to be answered is whether a full release, meaning that the employee could only be considered for return to work if there was no limitations and no requirement for accommodations, was really what was being talked about. And I will call this Court's attention to the declaration of Deb Petrosky, who is in charge of accommodations at Janssen Pharmaceutical, along with working with the Reed Group. At volume two, page 72 of the record, it is very clear that Ms. Petrosky says that Johnson & Johnson and Janssen Pharmaceutical accommodate people every single solitary day. And there is nothing in the record that would rebut that. The arguments and the inferences that appellant is seeking to place upon this Court in this argument simply do not exist. And also whether a statement by Dr. VanWey signed four years after she made representations to the Reed Group, upon which they relied, that she believed it was plausible for the appellant to return to work in May of 2012, creates a genuine issue of fact when she fails to acknowledge or recognize that in April of 2012, she affirmatively stated that the appellant cannot return to work until October 12th, which represents, from the Janssen's perspective, a change in her opinion. It is undisputed that Janssen uses an outside agency to determine things about FMLA, disability leave, and to receive accommodation requests so they can be evaluated. And then once those are evaluated and there is an understanding of the disability or request for accommodations, this can then be referred to Janssen That is Deb Petrosky. This process is in place to avoid those who have no need to know, to know about the disabilities and accommodations of individuals. In a large company where there are a lot of people, it is important to Johnson & Johnson and to Janssen that they keep that separation. The allegations that Janssen Pharmaceutical refused to engage in the interactive process are simply false statements. Under the timeline, which I think is a very important thing to review in this case, what Janssen did was to seek an understanding not only of the true nature of the appellant's condition, but also of the nature of the interactive process, and in the interactive process, so that they could engage in that process and commence an assessment of what needed to be done. The appellant is required to make a request for accommodations. This is not the state of the law in the State of Washington and should not be adopted by this Court as the standard. The standard in the State of Washington is that once an employer is aware of the disability and the request for accommodation, the responsibility of the employer is to take positive steps to accommodate those limitations. Those cases, Goodman v. Boeing and Hume v. American Disposal, make that point very clear. However, if the Court were to adopt a standard such as that which is being requested by the appellant in this case, it would make it impossible for an employer to actually provide accommodations in a reasonable and thoughtful manner while still complying with the law. I think, again, that you need to look at the facts and the time sequence. March 8, 2012, Dr. VanWay sent a report indicating that the appellant would not be ready to return to work in any capacity until 5-9-12. In any capacity. Not a full capacity. Not even a restricted capacity. In any capacity. On March 19, the regroup called the appellant about the results of an IME conducted by Dr. Boswick. On March 20, the regroup spoke to the appellant, part of the interactive process, and advised her of the nature of the IME results and told her that those results were going to be given to Dr. VanWay, so that Dr. VanWay could help them to solve whatever conflict existed between her opinion, based on a letter that she had written eight days after her previous letter, which was received by the regroup on March 20. They sent that letter to Dr. VanWay on March 20. And a review of the record indicates that on March 20, there was a conversation with the appellant about the results of the IME, and she indicated that they told her that she might need to actually go on long-term disability, while they continued in this process of discussing the issues that existed between her opinion and that of Dr. Boswick. She then sent in, on that same day, a long-term disability request signed by Dr. Boswick, excuse me, Dr. VanWay. And when Dr. VanWay signed that disability request, she again indicated that the appellant in this case could not go back to work at that time until the earliest May of 2012. So we have all of these conflicting pieces of information and all of this conflicting data. And now we have the request to return to work, according to the appellant. That request to return to work, received on March 20, at the same time that the application for long-term disability was submitted, basically contained no specific information about a date of return. It did, however, from the perspective of Janssen, contain aspirational statements about the employee's plan to return to work at some point. The information was signed by her health care provider, Dr. VanWay, and as I previously indicated, it was completely contradictory to prior statements. When faced with these contradictory statements, what any employer would do was to try to resolve them. And that is exactly what Janssen did in this case. The interactive process in this case involved Dr. VanWay and the appellant in this case. On March 22, Dr. VanWay, after receiving the report, was sent an e-mail at 11.10 a.m., in which Mr. Vollmer stated to her, asked her a question. He asked her if there were other treatment recommendations and whether she agreed with the assessment of Dr. Boswick. That was a part of the interactive process. Only two hours later, at 1.11 p.m., Dr. VanWay wrote the representative of the read group that she had reviewed the report in its entirety and stating in writing that she entirely agreed with Dr. Boswick's conclusions and recommendations. But she didn't stop there. She went on to state in writing that the appellate should remain off work for six more months given the variable cognitive deficits secondary to her psychological diagnosis. Despite the appellant's efforts to somehow deflect from the clear assessment of Dr. VanWay, in which she essentially repudiated her statement written on March 16, there is now an effort to say that somehow Janssen refused to engage in the interactive process with an individual whose physician had stated that she could not return to work under any set of circumstances. So she says in her subsequent, Dr. VanWay, she says in her subsequent declaration that in her view, Beeler could have returned to work. It was possible for her to return to work. And given that we're on a summary judgment standard and taking that declaration in the light most favorable to Beeler, doesn't don't we have to say there's a genuine issue of material fact as to whether she could have returned or not? I submit that when someone writes a declaration two or three years after the fact, in an effort to support their patient, disregards every piece of evidence and information that she had at the time, fails to mention any of the statements that she made other than the one that she wrote on the 16th, fails to recognize that on April 18, 2012, she again filled out a form which said very clearly, can this individual return to work? And she wrote, not until October of 2012. And there was a box where she could have checked with restrictions. She did not. What she said instead at the time that the company was evaluating the circumstance was that the appellant in this case could not return to work. This wasn't just a March statement. This was also an April statement. So aren't you talking about the weight of the evidence, which is something for the jury? I'm not speaking of the weight of the evidence. What I'm speaking of is a standard that the Court has set on many cases in summary judgment. You may not create contradictory evidence in order to create something that prevents summary judgment. And that is exactly what Dr. VanWay and the appellant were doing. They were attempting to create evidence that did not exist in order to avoid summary judgment in this case, because the facts remain that even if you don't agree that Jansen moved quickly enough, in 48 hours, 48 hours, there was a repudiation of the statement by Dr. VanWay saying that she completely agreed with the assessment made by Dr. Bostwick. And when Dr. Bostwick made his assessment, it is very clear from the record that he reviewed the job description to determine whether or not the appellant in this case could return to work under any circumstances. And his assessment, based upon his knowledge at the time of the job description, was that she could not return until the earliest in October of 2012. This is a clear issue of there is no question for the jury. The facts are as the facts are. And in this case, the facts and timeline are what really matter here. The appellant in this case does not have any genuine issues of material fact, only those which have attempted to be created, but which appear to disregard every other fact in this case, including the facts created by Dr. VanWay herself. I do think it's important, as I move forward toward the end of my time, I want to be sure that, from my perspective, if the Court believes that there is no inconsistency between the statements made by Dr. VanWay in March of 2016, that you do take a look at what she said in writing, in the record, unrepudiated, because you cannot hold two opinions at once. You cannot believe that someone can return to work and they can't return to work, unless you are only doing it for purposes of attempting to create an issue of fact. Your Honor, I think that I have covered most of what needs to be covered here, but I think once again, that we need to look at the facts in this case, the timeline in this case, and the fact that to the very moment of the appellant's deposition in 2016, she had never been released by any health care provider to return to work. That was a static set of conditions from the time of that March 8th letter all the way through, with the exception of one foray by Dr. VanWay on March 16th, which the record reflects she did only because of a request from her patient, and not because she really believed that that was the case. And she immediately, within 48 hours, repudiated that position. There is no question for the jury to decide in this case. She was engaged in reasonable activity, engaged in the interactive process, and there should not be any question but that the judgment of the lower court judge should be sustained. Thank you, Ms. Wilmer. If there was a hint of a suggestion to Dr. Bostwick, that would be a hint to Dr. Bostwick, that the judge should consider possible accommodations to facilitate Ms. Beeler's return to work. If there was a hint of a suggestion of that, then the defense argument in this case would have some merit. But the record is quite clear that Dr. Bostwick was not asked to consider anything about reasonable accommodations, and as I quoted from his, that's true both with respect to the form that exists at page 88 of the record, the employer utilizes, it's clear that they were looking for a full release. And it's also clear from the express language, from the questions that were presented to Dr. Bostwick, and from the express language of his report that I quoted in my previous remarks, that he did not in any way consider the notion of reasonable accommodation with respect to the effort to return Ms. Beeler to work. If there was any hint of that, he had. Well, what do we do about the fact that Dr. VanWay, who had considered reasonable accommodations, reiterated similar statements after March, in April, said she can't return to work in any capacity. She may be able to return to work on October 28th with accommodations. So Dr. VanWay was certainly considering whether reasonable accommodations would allow Ms. Beeler to return to work. We're still ignoring the March 16th letter. We're saying that doesn't count. We're still ignoring her summary judgment declaration. We're saying that doesn't count. If that evidence had been stricken from the record in the summary judgment proceeding below, then maybe we would have something to talk about with respect to that issue. But that evidence is... But you're saying even although Dr. VanWay clearly changed her views after reading Dr. Bostwick's report, the prior view remains in effect, almost as if it were from a different doctor. Is that what you're suggesting? No, Your Honor. I think it's for, your question presumes that in fact Dr. VanWay clearly changed her view. I think that's a fact question for the jury. You've got to read both her chart notes and her declaration to determine whether she clearly changed her view. You also have to consider whether after March 16th, 2012, she was asked whether accommodations would facilitate the return to work. She references them with accommodations in October. Certainly she does. So to that extent her opinion does vary from Dr. Bostwick's, because Dr. Bostwick's says that she'd be fully resolved within six months. Dr. VanWay says she'll continue to need accommodations. She didn't ever say that she couldn't have plausibly returned to work in May of 2012. She never said that. She never addressed that issue. You know what would have clarified this, Your Honor? You know what would have probably kept us from being here today? Is if the employer had followed the law and responded to the VanWay March 16th letter and engaged in the interactive process. Because then they could have clarified these questions. The notion that they did engage. I don't think they're sending Dr. VanWay, Dr. Bostwick's report was engaging in the interactive process. That's what I understand opposing counsel to be saying. Yeah, I appreciate that, Your Honor. In Zivkovic v. South California Edison at 302 Fed 3rd, 1080, this court outlined what the employer has to do with respect to engaging in the interactive process. At page 1089 of the opinion, the court said, an employee is not required to use any particular language when requesting an accommodation, but need only inform the employer of the need for an adjustment due to a medical condition. She did that. The interactive process requires, one, direct communication between the employer and the employee. Between the employer and the employee. Not between the employer and the healthcare provider. That may be helpful, but the requirement is communication between the employer and the employee. That didn't happen. Yeah, Ms. Beeler called Joe Vollmer at the Reed Group and he said nothing until you get a release. She called Carmen Harris, the HR person at Janssen, and she said, we won't talk to you until we get a release from the Reed Group. The release from the Reed Group required a full release. The other requirements of the interactive process are consideration of the employee's request. That didn't happen in this case. And the third requirement of the interactive process is offering an accommodation that is reasonable and effective. We never even got to that point. So if we're going to apply the law of the Ninth Circuit, and presumably Washington law, the employer had to respond to that March 16th letter, and it didn't. It didn't engage in the interactive process, and as this Court has held repeatedly, the employer cannot prevail at summary judgment if it fails to engage in good faith in the interactive process. The trial court didn't consider that. Therefore, with respect, the trial court should be reversed. Thank you very much. Thank you, Mr. Burns.
judges: Gould, Ikuta, Freudenthal